## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

-------------------------------------------------------x
In Re:

    PATRICK ARGENTI,

                      Debtor.

-------------------------------------------------------x
UNITED STATES OF AMERICA,

                      Plaintiff,
    v.
PATRICK ARGENTI,

                      Defendant.

-------------------------------------------------------x

Chapter 7

Case No: 05-51885 (AHWS)

Adversary Proceeding
No: 06-5078 (AHWS)

March 31, 2008

## DEFENDANT'S POST-TRIAL MEMORANDUM

Patrick Argenti, as defendant herein, respectfully submits his Post-Trial Memorandum in the above captioned adversary proceeding. As set forth below, the defendant respectfully requests that the court find in favor of the defendant and against the plaintiff in its adversary proceeding commenced pursuant to 11 U.S.C. 727(a)(4)(A).

## SUMMARY STATEMENT

Patrick Argenti did not devise a scheme or design to knowingly and fraudulently make a false oath or account in his chapter 7 bankruptcy petition, contrary to the allegations of the plaintiff herein. The scheme or design, as described by the plaintiff, is not in reality a scheme or design at all. The plaintiff has simply chosen to describe the allegedly false oaths as a scheme without articulating a coherent reason for the alleged "scheme". Most schemes exist to prevent the discovery of undisclosed assets or asset transfers. In this case, the plaintiff has failed to identify or establish any hidden or transferred assets. Therefore, no reason has been given for why the defendant would have engaged in the alleged "scheme" upon which the plaintiff builds its case. According to the plaintiff, in order for the imaginary "scheme" to work, the defendant had to "conceal the existence of the bankruptcy case from the Internal Revenue Service so that

the Internal Revenue Service did not disclose any information about the prior tax levy on the corporation known as Silver Miracle Inc. to the bankruptcy trustee". (Plaintiff's Post-Trial Memorandum at 2). In reality, the defendant had no reason to conceal the tax levy from the trustee as the trustee's knowledge of the tax levy would not and could not have led to the identification of hidden assets or undisclosed transfers of assets. There is no dispute that the money levied was not the defendant's money, and the debtor had disclosed the existence of Silver Miracle, Inc. to the Court and the bankruptcy trustee in his Petition. (GVT-A-SOFA-18).

The plaintiff's claim is essentially, nothing more than a series of allegedly false oaths made by the defendant without a central purpose. The plaintiff is unable to answer the question, "why would the defendant engage in the alleged scheme". After all is said and done, there is no dispute that the defendant debtor has no assets, has hidden no assets and has transferred no assets which can alter the size and scope of the bankrupt estate. The defendant has provided reasonable explanations for each of the allegedly false oaths and when combined with the lack of an identifiable "scheme to defraud" the plaintiff has failed to carry its burden of proof and the defendant is entitled to receive discharge pursuant to U.S.C. §727.

## FACTUAL BACKGROUND

Although the defendant generally agrees with the plaintiff's factual background as set forth in its Memorandum, a number of notable omissions exist. With respect to the three (3) trusts created by the defendant for the benefit of his three (3) children in 1988, it should be noted that the trusts filed timely tax returns for all years from 1988 through 2005, and the trusts have never been audited. (Tr.3-17). In addition, neither the Internal Revenue Service nor any court has ever found that the trusts are illegal or invalid. (Tr.3-18).

The settlement of the Merrill Lynch personal judgment of 12,000,000.00 against the defendant resulted in the defendant having to give everything he owned to Merrill Lynch, including his home, his furniture and furnishings, any cash he had, an art collection and even his clothing. (Tr.3-4 to 5; GVT-F-111).

Gross revenue or gross sales for Silver Miracle, Inc. in 2000 was zero or very little and on January 1, 2002, when ownership of the stock of Silver Miracle was transferred by the defendant to the Trusts, Silver Miracle was not worth more than $100,000.00.  (Tr. 3-7).

The bank account at Bank Leumi upon which the IRS issued a levy in September of 2005, was an attorney trust account maintained by a law firm.  (GVT-J-03).  Jean Argenti, as trustee, had intended to purchase the condominium on behalf of the Trusts and the contract deposit of $263,944.00 to do so came from the bank account of Silver Miracle, Inc., a corporation owned entirely by the Trusts since January, 2002, and was mistakenly placed in an attorney trust account subaccount bearing Jean Argenti's individual social security number.  (GVT-J-01 to -05)

Carolann Wierbicki, a bankruptcy specialist with the IRS, testified that contrary to the testimony of IRS Revenue Officer Bruce Berrian, even if the IRS was aware of the defendant's bankruptcy filing, there would have been no stay or impact on the IRS's levy of the Bank Leumi bank account containing Mrs. Argenti's social security number because the account was in Mrs. Argenti's name and not Mr. Argenti.  (Tr. 1-87 to 88).

With respect to real estate ownership, the defendant testified that neither the Bedford house nor the Southport house were ever in his name or his wife's name.  (Tr. 3-21).  Mr. Argenti testified that when he told the bankruptcy trustee at his 341 Creditors Meeting held on November 18, 2005, that he was not related to the landlord, he was thinking the Bedford residence, where he had rented and where he was not related to the landlord and where he had lived for most of that year.  (Tr.3-20).  The defendant testified that there was no reason or motivation for not telling the trustee that the Trusts owned the house in Southport where he was living in November of 2005 and that he just misunderstood the question.  (Tr. 3-21 and Tr. 2-10).

With respect to the Silver Miracle bank account, the defendant testified that he did not believe or understand that being the signatory on the Silver Miracle bank account might mean that he held or controlled property of another because the trustee of the Trusts authorizes all checks that are to be written

and signed on the Silver Miracle account. (Tr. 3-23 to 24). The defendant testified that every single check he wrote from the Silver Miracle account was authorized by Jean Argenti, trustee, and that none of the money in the Silver Miracle account was the defendant's money. (Tr. 3-24). The defendant also testified that by not identifying the Silver Miracle bank account in response to question 14 on the Statement of Financial Affairs, which asks for the identification of property owned by another person that the debtor holds or controls, it was not his intent to keep that information from the trustee of from the court. (Tr. 3-24 to 25). Finally, Mr. Argenti testified that with respect to the Silver Miracle bank account, after the stock in Silver Miracle was transferred to the Trusts, he was strictly a bookkeeper since every check that was ever written on the Silver Miracle account was authorized by Mrs. Argenti. (Tr. 2-20).

## DISCUSSION

As this court stated in Katz v. Kurtaj; (In re: Kurtaj), 284 B.R. 528, 529 (Bktrcy.D.Conn. 2002) (Shiff, J.), "Code §727(a)(4)(A) provides that the court shall grant the debtor a discharge unless the debtor knowingly and fraudulently in or connection with the case, made a false oath or account" (Kurtaj at 528). The Court went on to say that to deny the debtor's discharge under this subsection", the plaintiff must prove that the defendant made a statement under oath which he knew to be false, with the intent to defraud creditors or the trustee, and which related materially to the bankruptcy case". Kurtaj, 284 B.R. at 528. Citing, Chemical Bank v. Hecht, (In re: Hecht), 237 B.R. 7, 9 (Bktrcy.D.Conn. 1999).

In determining whether a statement is considered to have been made with knowledge of its falsity, this Court in Montey Corp. v. Maletta (In re: Maletta), 159 B.R. 108 (Bktrcy.D.Conn. 1993), set forth that where persuasive evidence of a false statement under oath has been produced by a plaintiff, "the burden shifts to the defendant to prove that it was not intentionally false, and fraudulent intent may be inferred if the false statement is not explained". (See also Kurtaj, 284 B.R. at 528). Importantly, bankruptcy courts have reasoned that fraudulent intent must be shown by actual, not constructive fraud. In re: Murray, 249 B.R. 223 (Bktrcy.E.D.N.Y. 2000) (Amon,J). The party objecting to the discharge must show that information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor

was careless or failed to fully understand his attorney's instruction  Murray, 49 B.R. 223, 228. "A false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent".  Halperyn, 346 B.R. at 69.

As set forth by this Court in Montey Corp. v. Maletta (In re: Maletta), 159 B.R. 108 (Bktrcy.D.Conn. 1993) (Shiff, J.), actual intent to defraud may be established through proof of sufficient "badges of fraud". "Such badges of fraud include reservation of rights in or the beneficial use of the transferred assets; inadequate consideration; close friendship or relation to the transferees; the financial condition of the transfor, both before and after the transfer; in the existence or accumulative affect of a pattern or series of transactions or course of conduct after the incurring of a debt, onset or financial difficulties or pendency or threat of suits by creditors".  Maletta, 159 B.R. 112, quoting In re: May, 12 Bankr. 618, 627 (Bankr. N.D. Fla. 1980).

Most importantly, a statement is material to the issue of a bankruptcy debtors' discharge if it is pertinent to the discovery of assets.  Kurtaj, 284 B.R. 528; 530, see also In re: Maletta, 159 B.R. at 113.

Plaintiff has failed to establish by a ponderance of the evidence of each element of 727 (a)(4)(A).

**Argenti's statements under oath.**

Plaintiff alleges that the defendant made six (6) statements under oath that were false. The six (6) alleged false statements are as follows:

1. Argenti said at his 341 Creditor's Meeting that he rented where he lived and in fact he did not.

2. Argenti said at his 341 Creditor's Meeting that he was not related to the landlord of his residence when in fact he lived in a residence owned by the Trusts he created for his children in 1988.

3. Argenti said at his 341 Creditor's Meeting that the only business he ever owned was Argenti, Inc. when in fact he had owned other businesses including Silver Miracle, Inc.

4. Argenti said at his 341 Creditor's Meeting that he did not hold or control property

of another when in fact he held and controlled a bank account from Silver Miracle, Inc.

5.    Argenti said at his 341 Creditor's Meeting that his children had been supporting him financially when in fact his children were not supporting him financially.

6.    Argenti omitted to list in his bankruptcy petition a debt owed to the IRS of at least $55,474.00.

### A.    Argenti's statement that he rents where he lives and that he is not related to the landlord.

The defendant testified at his 341 Creditors Meeting that he was not related to the landlord and was paying rent. However, six (6) months prior to the filing of the instant Adversary Proceeding, Argenti executed an Affidavit and directed his counsel to provide it to the plaintiff for the purposes of clarifying the record (GVT-O-03; Tr. 2-45 to 47). The debtor believed the Affidavit was an attempt to amend the answer he had given to the bankruptcy trustee (Tr. 2-45). Although no Adversary Proceeding had been commenced (and would not be commenced for another six (6) months) and no discovery requests had been made by the plaintiff, the Affidavit was accompanied by a representative copy of one of the trust agreements and copies of the 2005 Federal Income Tax Returns for all three (3) Trusts as well as Jean Argenti and Silver Miracle, Inc. (GVT-O-1 to 4).

"A debtor's disclosure of information previously omitted from schedules is some evidence of innocent intent, but this inference is slight where the debtor has amended his schedules after the trustee or creditors have already discovered what the debtor sought to hide". In re: Maletta, 159 B.R. at 112. Mr. Argenti's disclosure, through the Affidavit, was made before anyone had "discovered what the debtor sought to hide" and in time for everyone, including the trustee and/or any creditors, to act upon this disclosure. Not only did the debtor seek to clarify certain misstatements allegedly made at his 341 Creditor's Meeting, including the misstatement with respect to whether he was related to the landlord or whether he paid rent, but the Affidavit included copies of the trust agreements, the trust tax returns and the tax returns for Jean Argenti and Silver Miracle Inc. Had the defendant's intent been to perpetrate a

fraudulent deception and/or scheme upon this Court, or the plaintiff, why would the defendant have provided all of this information and documentation when he did?

Moreover, the plaintiff argues that the misstatements made by Mr. Agrenti at his 341 Creditor's Meeting were material to the bankruptcy trustee because the questions (and answers) were intended to determine "if the debtor somehow had a financial interest in the property or otherwise had a beneficial interest in the property". (Plaintiff's Post-Trial Memorandum at 19). In fact, Mr. Argenti has not owned real estate since 1998 (Tr. 3-21); neither the Bedford house or the Southport house were ever in his name individually (Tr. 3-21); the trusts were established by him in 1988, Mrs. Argenti has been the sole trustee throughout and has filed tax returns for each year from 1988 through 2005 (Tr. 3-17). Thus, the defendant does not have a financial or beneficial interest in the property and there is nothing "material" about this allegedly false oath.

### B.    Argenti's statement that the only business he ever owned was Argenti, Inc.

The plaintiff next alleges that the defendant made a false oath at his 341 Creditor's Meeting when he stated that the only business he ever owned was Argenti, Inc. (Plaintiff's Post-Trial Memorandum at 8). However, the plaintiff admits that Mr. Argenti did identify Silver Miracle, Inc. in his bankruptcy petition in response to question number 18 on the Statement of Financial Affairs which asks for the nature, location and name of any business in which the debtor was an officer, director, partner or managing executive of a corporation… within the six years immediately proceeding the commencement of this case, or in which the debtor owned 5% or more of the voting or equity securities within the six years immediately proceeding the commencement of this case. (GVT-A). In response to question 18, the debtor did provide the name, tax identification number, address, nature of business and beginning and ending dates of Silver Miracle, Inc. (GVT-A and Tr. 3-14).

In fact, Trustee Coan acknowledged that through the petition and the debtor's testimony, he had been provided with the information that he needed in order to know what businesses the debtor owned or

controlled since 1991. (Tr. 1-45 to 46). Mr. Argenti provided the Trustee full and complete information concerning all businesses that he owned since 1991 through the answers in his petition and his testimony at the 341 Creditor's Meeting. Nevertheless, the plaintiff argues that "Argenti failed to disclose that he transferred 100% of the stock of Silver Miracle, Inc. to the Trusts in 2002…" (See plaintiff's Post-Trial Memorandum at 19). However, a review of the debtor's bankruptcy petition confirms that it does not contain any questions asking the debtor to identify transfers of assets made by him for fair consideration within four (4) years of the filing of the bankruptcy. During the 341 Creditor's Meeting, Trustee Coan asked the following question, "in the four years before bankruptcy did you transfer anything or give anything away for less than fair consideration other than small birthday or holiday gifts? (GVT-E). The debtor responded "no". (GVT-E). Debtor's uncontraverted testimony at trial was that Silver Miracle was not worth more than $100,000.00 when it was transferred to the Trusts on January 1, 2002 (Tr. 3-7) and was probably worth far less than $100,000.00 given his testimony that in the year 2000 gross revenue or gross sales was "zero" or "little" (Tr. 3-7).

Once again, it can be observed that the defendant's failure to recollect Silver Miracle at his 341 Creditor's Meeting, even though the debtor identified Silver Miracle in his petition, was not a material omission in that it does not lead to the discovery of any assets or fraudulent conveyances.

### C. <u>Argenti's statement that his children support him</u>

Plaintiff next alleges that Argenti made a false oath when, at his 341 Creditor's Meeting, he stated that his children support him financially. As with the prior allegedly false oath made by Mr. Argenti with respect to his being related to the landlord, six (6) months prior to the plaintiff's filing of this Adversary Proceeding, the defendant provided the plaintiff with an Affidavit clarifying the record concerning this allegedly false testimony. (GVT-O). In fact, not only did the defendant debtor provide the Affidavit at GVT-O, but his children, the beneficiaries of the Trust, also submitted an Affidavit (GVT-P) clarifying the issue of whether they provided direct financial support for their father. Together, the Affidavits of the defendant and his children, along with the defendant's testimony at his 2004 examination are consistent

with his testimony at trial concerning why, at the 341 Creditor's Meeting, he initially told the Trustee his children support him financially. (Tr. 2-44; 2-47). According to Mr. Argenti's Affidavit (GVT-O) what he meant by his testimony was that "since I have no job and no income (I have not had a job or income for more than five years) I feel like they have been supporting me by virtue of the Trusts and employment of my wife through the Trusts' company, Silver Miracle, Inc." (GVT-O-01 to 02). When asked this question by the plaintiff at trial, Mr. Argenti testified "the Trust is owned by Silver Miracle. The children are the Trust. When he asked the question, I should have said the word trust instead of saying the word kids. In my mind it was the same thing." (Tr. 2-44). Moreover, Mr. Argenti also believed that this mistake had been corrected through the production of the Affidavits at GVT-G and GVT-O (Tr. 2-44). Moreover, the allegedly false oath is not material in that it certainly does not lead to the discovery of assets or property of the debtor.

### D. Argenti's failure to identify the IRS as a creditor

Next, the plaintiff argues that the defendant made a false oath by omitting to include the debt due to the IRS on his initial petition (Plaintiff's Post-Trial Memorandum at 7). Pursuant to Bankr. R. 1009, the bankrupt may amend his schedules as a matter of course at any time before the case is closed. On or about January 24, 2006, (approximately 100 days after the filing of his petition on October 14, 2005 and less than sixty-eight (68) days after the 341 Creditor's Meeting on November 18, 2005), Mr. Argenti filed amended schedules which added the IRS and two (2) other creditors to his petition. (Case no: 05-51885, docket number 21; GVT-D-01 to 06). According to IRS Revenue Officer Berrian, the IRS had actual notice that the debtor had filed bankruptcy "within a month or two of the meeting which occurred between the IRS, the debtor and the debtor's spouse on November 3, 2005". (Tr. 1-61). Despite this, the IRS waited until January 17, 2006 to file a motion to extend the time within which a to file complaint objecting to discharge. (Case no: 05-51885, docket number 15).

The debtor testified that he initially did not list the IRS as a creditor because he was not certain there was a valid debt owed to the IRS based on two (2) factors. First, the IRS had levied an attorney trust

account containing over $260,000.00 which they refused to release back to the Trusts, and second, the debtor felt that due to the age of the IRS debt, its collectability was questionable. (Tr. 2-49 to 53; 3-4 to 13). Between Christmas and New Years of 2005, the debtor, with the assistance of counsel, decided to amend the schedules to add the potential IRS debt. (Tr. 2-51 to 52). In fact, the debtor testified that he "signed off on the amendment at a meeting at my attorney's office the first week of January, 2006". (Tr. 2-52). It should be noted that counsel for the debtor, Steven D. Feinstein, appears in this matter *pro hac vice* and the filing of all electronic documents, such as the amendment to schedules, must be handled by James Berman, Esq., sponsoring counsel. This may serve to explain the delay between the debtor's "sign off" on the amendment and its actual filing, by attorney Berman's office on January 24, 2006.

Plaintiff argues that it was part of the debtor's scheme and design to keep the IRS from learning of the filing of his bankruptcy petition. (Plaintiff's Post-Trial Memorandum at 22 to 23). In fact, plaintiff's counsel makes the statement that "unlike most taxpayers, it was Argenti's goal at the time he filed the bankruptcy petition to owe the IRS more". (Plaintiff's Post-Trial Memorandum at 22). Yet, if plaintiff's counsel is correct, and the debtor wanted to owe the IRS more, why would he intentionally fail to identify the full amount of the debt when, according to IRS Bankruptcy Specialist, Carolann Wierbicki, the debt was dischargeable (Tr. 1-85). The debtor has offered a credible explanation as to why he was not certain that there was a dischargeable IRS debt that should be listed on his schedule. (Tr. 3-12 to 14). The debtor testified that he had no reason not to tell Mr. Coan that he might owe the IRS money and that he certainly did not intend to deceive the bankruptcy trustee at the 341 Creditor's Meeting by not listing the dischargeable IRS debt. (Tr. 3-13 to 14). The Plaintiff in this matter had actual knowledge of the bankruptcy filing within a month or two of their meeting with the debtor and his spouse on November 3, 2005. (Tr. 1-61). The debtor timely amended his Petition thereafter and no prejudice whatsoever was visited upon this plaintiff. Once again, the omission was not material because it could not lead to the discovery of any assets of the debtor and the debt was fully dischargeable.

**E.     Argenti's failure to identify the fact that he was a signatory on**

## the bank account of Silver Miracle, Inc.

The plaintiff argues that the debtor made a false statement in his answer to question 14 of this Statement of Financial Affairs when he put an "x" in the box indicating that he did not hold or control property of another. Plaintiff argues that since the defendant was the sole signatory on the Silver Miracle checking account he in fact held or controlled property of another. (Plaintiff's Post-Trial Memorandum at 23 to 24; Stipulation, paragraph 12, GVT-C-05). Mr. Argenti had been the sole signatory on the Silver Miracle bank account since it opened in 1996. (Stipulation, paragraph 15(f)); GVT-F-16 to 18, 47 to 48, 86, 95; GVT-G-01; Tr. 2-17 to 21, 63 to 64, 78). On January 1, 2002, the stock in Silver Miracle was transferred from the debtor to his children's trusts and according to the debtor, he remained the sole signatory on the account as a convenience to the trustee. (Tr. 2 – 20 to 22). The debtor testified that he did not believe that he held or controlled the account, but viewed himself as a bookkeeper because every check on that account after January 1, 2002 was authorized by the trustee of the Trusts. (Tr. 2-20 to 22).

The plaintiff alleged that the defendant purposely, intentionally and fraudulently failed to answer question 14 in his Statement of Financial Affairs accurately in order to deprive the Chapter 7 Trustee of learning that his living expenses were paid for with funds withdrawn from the Silver Miracle bank account. (Plaintiff's Post-Trial Memorandum at 23 to 25). This assertion is believed by the evidence. First, the defendant already explained that when he told the Chapter 7 Trustee that his children supported him, he was referring to their Trusts (Tr. 2-44). Although the plaintiff failed to examine the defendant at trial concerning any of the checks written on the Silver Miracle account (GVT-H-01 to 48), (and although many of the copies submitted by the plaintiff are duplicates), this Court can readily observe that the checks are for mundane living expenses, not only of the debtor, but of the debtor's spouse and the debtor's children.

Most importantly, there is no claim that the money in the Silver Miracle account is the debtor's money. Why would the defendant debtor intentionally mislead the Trustee concerning an asset that is clearly not his?

### F.    Fraudulent Intent

Finally, the plaintiff argues that the court should infer that the allegedly false statements by the defendant debtor were made with fraudulent intent because "he has failed to provide a credible explanation for why he made these false statements". (Plaintiff's Post-Trial Memorandum at 25). It is respectfully submitted that the plaintiff has failed to show by a preponderance of evidence that Argenti's fraudulent intend should be inferred. Mr. Argenti has provided a credible explanation to each of the alleged false statements or false oaths. In most cases, he corrected and/or clarified the allegedly false statements and false oaths, whether through amendment to his schedules or by Affidavit, <u>before</u> deadlines to do so had passed; adversary proceedings have been commenced and/or prejudice had accrued. The credible explanation and the subsequent disclosures are evidence of innocent intent. <u>Maletta</u>, 159 B.R. at 112. Moreover, there are no "Badges of Fraud" because as has been shown, this debtor had nothing to hide. There are no assets that were not revealed or disclosed or discovered. There is no evidence that the debtor maintained the beneficial use of a transferred asset or that there was the lack of fair consideration of a transferred asset. The trusts were established in 1988, seventeen (17) years before the debtor filed his Petition and the debt which the defendant seeks to discharge dates back to the period from 1998, 1999, and 2000 (GVT-B-10). There is no connection that has been established between the allegedly false oaths, the transfer of any assets and the onset of the defendant's financial difficulties which can support the suggestion that "badges of fraud" exist herein.

## **CONCLUSION**

Patrick Argenti made innocent misstatements on his petition and at his 341 Creditor's Meeting. Those misstatements have been credibly explained. Mr. Argenti amended his schedules in a timely fashion and provided Affidavits to the plaintiff six (6) months before an adversary proceeding was commenced clarifying the misstatements and the reasons therefore. In November of 2005, at a meeting with the plaintiff, the defendant debtor and his wife provided the plaintiff with all of the financial records regarding the Trusts, Silver Miracle and the Argenti's and a detailed written and signed Affidavit. These documents provide the history of the Trusts, their acquisition of the Silver Miracle stock in January, 2002; the Trusts

ownership of real estate; the use of part of that real estate by Silver Miracle and the use of part of that real estate by the debtor and his family. (GVTG-F- 1 to 32). This is not the conduct of someone intending to knowingly, intentionally and fraudulently deceive the IRS or this Court. Conversely, if the defendant had listed the IRS debt and refused to provide the IRS with all of the details concerning the Trusts, Silver Miracle and the Argenti's that were provided on November 3, 2005, the plaintiff could argue that the defendant engaged in a fraudulent scheme to deceive. However, the exact opposite occurred. The IRS had full and complete disclosure of the details of the Trusts, Silver Miracle and the Argenti's in early November, 2005. After timely amendments to the Schedules were made to add the IRS debt, the plaintiff was provided with additional Affidavits from the defendant and his children. The defendant did not file objections seeking to prevent the discharge of the debt due the IRS under 11 USC 525, instead opting to seek to prevent Mr. Argenti from obtaining a discharge entirely under 11 USC 727 (a)(4)(A). Yet, absolutely no prejudice was visited upon any creditors, including the IRS, as the uncontraverted evidence in this matter establishes that the debtor does not own Silver Miracle; did not transfer the stock in Silver Miracle for less than fair consideration; does not own the Trusts or the assets of the Trusts; does not own

any other assets or anything of value and has no income. For all these reasons, the plaintiff has failed to carry its burden that Patrick Argenti devised a scheme or design to knowingly and fraudulently make a false oath in his Chapter 7 Bankruptcy Petition.

Respectfully submitted,

_____
Steven D. Feinstein, Esq. (phv0381)
Gallo, Feinstein & Naishtut, LLP
Attorney for Defendant
211 South Ridge Street
Rye Brook, New York 10573
(914) 939-0002
sfeinstein@gfnlaw.com