**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| PATRICK ARGENTI, | : | Case No. 05-51885 |
| Debtor. | : | |

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Adv. Pro. No. 06-5078 |
| Plaintiff | : | |
| v. | : | |
| PATRICK ARGENTI, | : | |
| Defendant. | : | |

_____

APPEARANCES:

Ann M. Nevins, Esq.                                    Attorney for Plaintiff
United States Attorney's Office
915 Lafayette Boulevard, Rm. 309
Bridgeport, CT 06604

Steven D. Feinstein, Esq.                              Attorney for Defendant
Gallo, Feinstein & Naishtut
211 South Ridge Street
Rye Brook, NY 10573

James Berman, Esq.                                     Attorney for Defendant
Zeisler and Zeisler
P.O. Box 3186
Bridgeport, CT 06605

_____

**MEMORANDUM OF DECISION ON COMPLAINT
TO DENY DISCHARGE UNDER 11 U.S.C. § 727(a)**

Alan H.W. Shiff, United States Bankruptcy Judge.

    The plaintiff, on behalf of the Internal Revenue Service, brought this action under

11 U.S.C. § 727(a)(4)(A) [1] to deny the defendant a discharge, alleging that he made false statements under oath in this bankruptcy case. The defendant, chapter 7 debtor, admits that he made false statements under oath, but contends that he did not do so knowingly and fraudulently and that his false statements were immaterial.

## BACKGROUND

On November 25, 1996, the defendant formed and was the sole director and shareholder of Silver Miracle, Inc.[2] On or before January 6, 1999, the defendant established a bank account for Silver Miracle on which he was the sole signatory.[3] On or about January 1, 2002, he transferred his 100% ownership of Silver Miracle in a stock transfer to three trusts (collectively the "trusts") which he had previously established for his three children, and for which his wife is trustee.[4] Notwithstanding that transfer, the defendant remained the sole signatory on the Silver Miracle bank account.[5]

On or about September 22, 2005, the IRS issued a levy against a bank account owned by the defendant's wife for the satisfaction of a $319,418 tax liability the IRS claimed was jointly owed by her and the defendant.[6] That account contained

---

[1] See *infra* at 3-4. The plaintiff's Complaint, cited 11 U.S.C. § 727(c)(1), which refers to § 727(a). Complaint ¶ 4. At trial, the plaintiff clarified that its objection is based only on § 727(a)(4)(A). Trial Tr. Vol. I, 4-5, November 7, 2007 ("Tr. Vol. I").

[2] Trial Tr. Vol. II, 17-19, November 8, 2007 ("Tr. Vol. II"); Plaintiff's Exh. G at 7-11.

[3] Plaintiff's Exh. G at 1-6.

[4] Plaintiff's Exh. L at 1-23; Plaintiff's Exh. K at 1-5; Plaintiff's Exh. N at 1-2; Plaintiff's Exh. O at 2; Plaintiff's Exh. P at 2.

[5] Tr. Vol. II at 21-22.

[6] Stipulation of Facts dated November 6, 2007("Stipulation") at ¶ 5-7; Plaintiff's Ex. I at 4; Tr. Vol. II at 54-55.

approximately $263,944.[7] Less than a month later, on October 14, 2005, the defendant commenced this chapter 7 case and filed the requisite Schedules, Statement of Financial Affairs ("SOFA"), and creditor mailing matrix. The defendant omitted any IRS tax liability from Schedule F.[8] On November 3, 2005, the defendant met with the IRS to discuss the levy. At the conclusion of that meeting, the defendant signed an affidavit acknowledging his tax liability.[9] On November 18, 2005, he testified at the first meeting of creditors ("§ 341 Meeting"). *See* 11 U.S.C. § 341(a). In response to the bankruptcy trustee's inquiry as to whether his Schedules were complete, the defendant affirmed that they were free from omissions.[10] On that date, the bankruptcy trustee filed a report of no distribution, certifying that the defendant's bankruptcy estate had no assets. On January 24, 2006, the defendant amended Schedule F to add the IRS and two other entities as creditors.[11]

On October 26, 2006, the plaintiff commenced this adversary proceeding.[12] On November 6, 2007, in anticipation of trial, the parties entered into a Stipulation of Facts in which the defendant admitted that he gave false testimony under oath at the § 341 Meeting,[13] and that he made false statements under oath in his Schedules, SOFA, and creditor mailing matrix.[14]  *See infra* at 5.

---

[7]Plaintiff's Exh. I at 4.

[8]Stipulation at ¶ 8.

[9]Plaintiff's Exh. I at 1-4; Tr. Vol II at 31 and 52-53.

[10]Audio Recording of § 341 Meeting, Plaintiff's Exh. E at 3:36 (minute:second).

[11]Plaintiff's Exh. D at 1-6.

[12] The plaintiff's Complaint was timely filed due to extensions of the original January 17, 2005 filing deadline to and through October 31, 2006. Stipulation at ¶ 4.

[13]Stipulation at ¶ 15.

[14]*Id.* at 8-15.

## DISCUSSION

Code § 727(a)(4)(A) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless -
    (4) the debtor knowingly and fraudulently, in or in connection with the case-
        (A) made a false oath or account . . . .

11 U.S.C. §727(a)(4)(A).

Since a denial of discharge under § 727 is characterized as an "extreme remedy," the complaint "must be construed strictly against the [the plaintiff] and liberally in favor of the [the defendant]." *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006)(citation omitted). The plaintiff bears the burden of proof. Rule 4005, Fed. R. Bankr. P. [15] In this context, because the defendant has admitted he made false statements under oath in connection with this case, the plaintiff need only prove by a preponderance of the evidence that the defendant knew those statements were false, he made them with the intent to defraud creditors or the trustee, and they were material to the bankruptcy case. *In re Murray*, 249 B.R. 223, 228 (E.D.N.Y. 2000); *In re Gollomp*, 198 B.R. 433, 437 (S.D.N.Y. 1996); *In re Shallow*, 367 B.R. 48, 54 (Bankr. D.Conn. 2007).

A false oath or account has been defined to include statements in documents, such as the Schedules, SOFA, and creditor mailing matrix, and statements made by a debtor during examinations under oath, such as his testimony during the § 341 Meeting. *See Montey Corp. v. Maletta*, *(*In re Maletta*)*, 159 B.R. 108, 112 (Bankr. D.Conn. 1993). Both omissions and affirmative misstatements qualify as false statements under §727(a)(4)(A). *Republic Credit Corp. v. Boyer*, *(In re Boyer)*, 367 B.R. 34, 45 (Bankr. D.Conn. 2007), *aff'd* 384 B.R. 44 (D.Conn. 2008). As this court has previously noted*:*

> a debtor has. . . affirmative dutie[s] to identify all assets [and] liabilities and to answer all questions fully and with the utmost candor. Creditors and those charged with the administration of the bankruptcy estate are entitled to a truthful statement of the debtor's financial condition. Such complete disclosure is . . . a prerequisite to the debtor's ability to obtain a discharge. *Maletta*, *supra*, 159 B.R. at 112.

---

[15]Rule 4005, Fed. R. Bankr. P., states: "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."

A false oath or account is deemed to be made with knowledge of its falsity if it was known by a debtor to be false when made or if it was made with reckless disregard for the truth. *D.A.N. Joint Venture L.P. v. Cacioli, (In re Cacioli)*, 285 B.R. 778, 784 (Bankr. D.Conn 2002), *aff'd* 332 B.R. 514 (D.Conn. 2005), *aff'd* 463 F.3d 229 (2d Cir. 2006). Courts may consider a debtor's education and business experience when evaluating knowledge of a false statement. *Northwest Alliance Fed. Credit Union v. Garcia, (In re Garcia)*, 260 B.R. 622, 631 (Bankr. D.Conn. 2001).

The plaintiff claims and the defendant has conceded[16] that he made seven false statements. He testified at the § 341 Meeting that: (1) he rented his residence,[17] (2) he was not related to the landlord of his residence,[18] (3) the only business he ever owned was Argenti, Inc.,[19] and (4) his children were supporting him with money from their employment.[20] In addition, the defendant: (5) stated in his answer to SOFA Question 14 that he did not hold or control property of another,[21] (6) omitted his IRS tax liability from his Schedule F,[22] and (7) omitted a reference to the IRS from his creditor mailing matrix.[23] The plaintiff argues that the defendant knowingly and fraudulently made each of those false statements as a strategy for hiding from the bankruptcy trustee the transfer of his Silver Miracle assets to the trusts, *supra* at 2. The plaintiff need only satisfy its burden of proof on one of those false statements.

The defendant's answer to SOFA Question 14 is perhaps the best example on the

---

[16] Tr. Vol. II at 10-11, 27-28, 57 and 59-60; Plaintiff's Exh. F at 68-69; Stipulation at ¶ ¶ 9-15.

[17] Plaintiff's Exh. E at 2:09.

[18] *Id.* at 2:11.

[19] *Id.* at 2:15.

[20] *Id.* at 2:42.

[21] Plaintiff's Exh C at 5; Stipulation at ¶ 15(F).

[22] Stipulation at ¶ 8.

[23] *Id.*

issue of the defendant's intent. That question required him to "[l]ist all property owned by another person that [he] holds or controls."[24] The defendant's response, which was under oath, was to put an "X" in the box next to Question 14 indicating "None."[25]

The plaintiff argues that the following evidence regarding the Silver Miracle bank account proves that the defendant intentionally and fraudulently misstated the truth in answering that question. The defendant knew he was the sole signatory on the Silver Miracle account.[26] It is undisputed that the defendant had the sole right to use the funds in that account[27] and he repeatedly exercised that right for his own purposes, i.e., to pay his ordinary living expenses.[28] The defendant has admitted "that the checks [drawn on the Silver Miracle account were] for mundane living expenses, not only of the [defendant], but of the [defendant's] spouse and the [defendant's] children."[29] For example, from January 2005 to January 2006, the defendant wrote checks totaling over $81,000.[30] Those checks included $10,545 in checks made out to cash, a check in the defendant's name for $1,000, and $23,451.96 in checks made out to American Express.[31]

The defendant testified that he was not in control of the Silver Miracle bank account because his wife authorized every check in her capacity as trustee.[32] He claims that he was simply a "bookkeeper" and "[he] had a honor and . . .an obligation" to only sign checks

---

[24]Plaintiff's Exh. C at 5.

[25]*Id*. at 5 and 8.

[26]Stipulation at ¶ ¶ 12 and 15(F); Tr. Vol. II at 19-20; Plaintiff's Exh. H at 1-48.

[27]Tr. Vol. II at 19-20 and 63.

[28]Plaintiff's Exh. H at 1-48.

[29]Defendant's Post-Trial Memorandum at 11.

[30]Plaintiff's Exh. H at 1-48.

[31]*Id*.

[32]Tr. Vol. II at 20; Trial Tr., Vol. III, 22-25, November 9, 2007 ("Tr. Vol. III").

if specifically authorized by his wife.[33] The defendant was not a credible witness in asserting that claim.[34] Indeed, throughout the course of the trial he was evasive and combative in attempting to explain his false statements under oath regarding, *inter alia*, the Silver Miracle account.[35]

The issue then evolves to whether that intentionally false statement was material to this bankruptcy case. A statement was material if it was pertinent to the discovery of assets. *Maletta*, *supra*, 159 B.R. at 112. The plaintiff argues that had the defendant honestly answered Question 14, the bankruptcy trustee would have learned of the defendant's transfer of Sliver Miracle and its assets to the trusts, *see supra* at 2. With that information, the bankruptcy trustee could have explored the possibility of avoiding the transfer for the benefit of the estate.[36]

The defendant counters that his false statement was not material because the Silver Miracle bank account was not held in his name. That argument misconstrues the plain language of the question. Question 14 does not inquire about property the defendant owns (*compare, e.g.,* SOFA question 18), but rather *property that is under the defendant's control*. Obviously, the materiality of Question 14 is that it serves to furnish information about property the bankruptcy trustee might pursue. Indeed, the bankruptcy trustee testified that had he been aware of the defendant's status as sole signatory of the Silver

---

[33] Tr. Vol. II at 20-21; Tr. Vol. III at 32-34 and 42-46.

[34] It is noteworthy that an adverse inference may be drawn when a party fails to call a witness whose testimony would be material and the witness is within the control of that party. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 81-82 (2d Cir. 2000). *See also Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 432, n.10 (2d Cir. 1999). When determining whether a witness was available to be called by a party the court looks to "all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility." *Id*. Here, the court need not determine whether such an inference should be drawn from the defendant's failure to call his wife as a witness in support of his claim that he was not in control of the Silver Miracle bank account as the court already has found that his testimony regarding that account was not credible.

[35] Tr. Vol. II at 8-11, 42-44 and 57-59; Tr. Vol. III at 32-35, 42-49 and 57-63.

[36] Tr. Vol. I at 34-35 and 53-54.

Miracle account, he likely would not have filed a report of no distribution,[37] *see supra* at 3, and would have investigated whether the funds in the account were property of the estate.[38]

Having determined the plaintiff has offered persuasive evidence that the defendant knowingly and fraudulently gave a false answer to SOFA Question 14 and that his answer was material in this case, the court need not address whether the plaintiff has also satisfied its burden of proof as to the defendant's other false statements. Nonetheless, a brief comment on his false statement concerning his tax liability is warranted.

As noted, this case was commenced on October 14, 2005. The petition included Schedule F, and it was signed by the defendant under penalty of perjury that it was accurate.[39] Schedule F required the defendant to "[s]tate the name . . . of all entities holding unsecured claims without priority against the [defendant] or the property of the [defendant], as of the date of filing of the petition."[40] The defendant omitted his IRS tax liability from Schedule F. *See supra* at 5 (false statement (6)). It is clear that this omission was intentional because he admitted at trial that, although he was not sure of the exact amount of the debt, he knew on the petition date that he owed the IRS hundreds of thousands of dollars.[41] It is worth noting that the defendant attempted to conceal that omission at the § 341 Meeting when he testified that his Schedules were accurate. *See supra* at 3. He testified at trial that he did not inform the bankruptcy trustee of his IRS tax liability at the meeting because he felt that the collectability of the debt was questionable due to its age, and he was unsure of the amount of the debt.[42] Those explanations are belied by the fact that the defendant acknowledged the IRS's efforts to collect the debt and

---

[37]Tr. Vol. I at 22-24.

[38]Tr. Vol. I at 34-35, 50-51 and 53-54.

[39]Plaintiff's Exh. B at 15.

[40]Plaintiff's Exh. B at 10.

[41]Tr. Vol. II at 57.

[42]Tr. Vol. III at 13.

the amount of the debt in an affidavit executed on November 3, 2005, fifteen days before the § 341 Meeting.[43] Under those circumstances, the defendant's belated amendment of Schedule F on January 24, 2006, *supra* at 3, can only be viewed as an acknowledgment that his intentional omission had been discovered.

## CONCLUSION

For the foregoing reasons, the defendant's discharge is DENIED, and a separate order to that effect will follow.

Dated at Bridgeport, Connecticut, this 4th day of August 2008.

Alan H. W. Shiff
United States Bankruptcy Judge

---

[43]Plaintiff's Exh. I at 4; Tr. Vol. II at 54-55.